Matthias,- J.
 

 This action in injunction was brought in the court of common pleas of Cuyahoga county to prevent the holding of an election for mayor of the city of Cleveland under the provisions of Section 73 of the Charter of that city, as recently amended, upon the ground that the same contravenes Section 1, Article XVII of the Constitution of Ohio, providing that the election of all elective officers other than state and county officers shall be held on the first Tuesday after the first Monday in November in the odd-numbered years. The common pleas court and the Court of Appeals, upon proceedings in error, held that the Charter provision is not violative of the state Constitution. A reversal is sought by petition in error filed in this court.
 

 The question presented arose from the action of the electors of the city of Cleveland in so amending the city Charter as to change the form of government from the so-called manager plan to the mayor plan, and by charter provision duly adopted providing for the election of their chief executive by the qualified electors of the city of Cleveland. By its very terms, this change of form of government became effective immediately; provision having been made therein for the discharge of the duties devolving upon the mayor by another designated officer of the city as “Acting Mayor,” until a mayor is elected as therein provided.
 

 Section 73 of the Charter is as follows: “If at any time, which is more than one year before the next regular municipal election, the office of mayor is va
 
 *546
 
 cant by reason of non-election, death, resignation, removal from office in any way except by recall election, removal of residence from the city, or from any other canse whatsoever, such vacancy shall be filled by special municipal elections. If at the time this section takes effect, no eligible person has been elected to the office of Mayor in the manner provided in this charter, then the office of Mayor shall be deemed vacant by reason of non-election. The aforesaid special municipal elections shall be held on the first Tuesday after sixty days from the day on which said vacancy first occurs, at which time the non-partisan primary election shall be held, and on the fifth Tuesday following the said non-partisan primary election, at which time the final special municipal election shall be held, and all the provisions in this charter contained as to nomination and election of candidates for mayor at regular municipal elections shall apply to the said special municipal elections. The person so elected as mayor at the said special municipal elections shall assume the office immediately upon his election and qualification and shall serve until the first Monday following the next regular municipal election and until his successor is elected and qualified. During the existence of such vacancy in the office of mayor, pending the time the said vacancy is filled by special municipal elections, the duties of the office of mayor shall be discharged by the head of one of the departments provided for in this charter under the title of Acting Mayor; provided, however that if the vacancy occurs at a time when special municipal elections are not authorized in this section, then the said head of one of the departments shall succeed to the office of mayor and
 
 *547
 
 be mayor until the first Monday after the next regular municipal election and until his successor is elected and qualified. In either of the above cases the order of succession as Acting Mayor or as Mayor shall be as follows: Director of Law, Director of Finance and Director of Public Utilities. In all cases at the next regular municipal election a mayor shall be elected for the term of two years. If the Mayor, or the person performing the duties of Mayor under the title Acting Mayor, be temporarily absent from the city, or become temporarily disabled from any cause, his duties shall be performed during such absence or disability by the head of one of the aforesaid departments in the above order, and under the title of Acting Mayor. ”
 

 Section 3 of the Charter makes provision for the regular election of elective officers of the city on the first Tuesday after the first Monday in November in odd-numbered years, in full conformity with Section 1 of Article XVII of the state Constitution. The latter was adopted in its present form in 1905 for the purpose of separating the election of municipal officers from the election of state and county officers.
 

 It is to be observed that we are not dealing with a provision for the regular and permanent election of municipal officers. Section 73 of the city Charter provides a method of transition whereby the change in the form of government adopted could become promptly effective, and officers be chosen by the electors of the city in the manner prescribed by the terms of the Charter, and also a plan and method of filling any vacancy subsequently occurring in the office of mayor within the limitations specified by action of the electors of the city at a special election.
 

 
 *548
 
 A situation not unlike that here presented was before the court in
 
 State, ex rel. Eavey,
 
 v.
 
 Smith, Secy. of State,
 
 107 Ohio St., 1, 140 N. E., 737, in which the act providing for the transition of county commissioners’ terms from two to four years was held valid, notwithstanding a temporary conflict with the provisions of the Constitution providing that the terms qf all elective county officers shall be an even number of years. The language there used is appropriate here: “these constitutional provisions are proposed and adopted to control and limit the regular, orderly, and permanent course of public office and affairs, and are not designed or adapted to meet the transition periods of intervals that naturally result from needed changes in the public service through laws regularly and duly enacted.”
 

 The unquestioned authority of the city not only to adopt but to at will change its form of government includes the implied power to make provisions appropriate for, and essential to, the transition. Here the transition period has been provided for as nearly as possible in the same manner as the permanent situation under the Charter, which concededly is valid.
 

 Section 1 of Article NYU of the Constitution of Ohio has to do only with regularly recurring elections. Section 2 of that Article prescribes the method of filling vacancies in elective state offices, which, under conditions stated, is by election for the unexpired term, and then provides that ‘
 
 ‘
 
 all vacancies in other elective offices shall be filled for the unexpired term in such manner as may be prescribed by law.” Municipal offices are included in “other elective offices.” Hence the constitutional requirement as to
 
 *549
 
 the time of election “in odd numbered years” can have no reference whatever to any election for the purpose of filling a vacancy, for it is specifically provided that vacancies shall be filled “in the manner provided by law.” The contention that vacancies in elective offices cannot be filled by election becomes absurd when it is observed that the Constitution itself provides for the filling of vacancies in state offices by election.
 

 A Charter provision authorized by the Constitution itself has the force and effect of law governing and controlling the affairs of the city. Certainly, having the power to determine its form of government, the functions and powers of its officers and the manner of their selection, the municipality may by the same method determine the manner of filling a vacancy occurring in any such office.
 

 Judgment affirmed.
 

 Allen, Kinkade and Robinson, JJ., concur.
 

 Ray, J., not participating.