[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 73.]

THE STATE EX REL. CITY OF TOLEDO *v.* LUCAS COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Toledo v. Lucas Cty. Bd. of Elections*, 2002-Ohio-1383.]

*Elections—Mandamus sought to compel Lucas County Board of Elections and its members to conduct a special election on May 7, 2002, for the unexpired term of office for the District 4 Member of the Toledo City Council—Writ granted, when.*

(No. 02-366—Submitted March 22, 2002—Decided March 28, 2002.)

IN MANDAMUS.

_____

*Per Curiam.*

{¶ 1} Effective January 8, 2002, Edna Brown resigned her office as a member of the Toledo City Council to accept a seat in the Ohio General Assembly. Brown was the District 4 city council representative, and her latest term began in 2001. Following Brown's resignation, the city council appointed Michael Ashford to fill the vacancy pending a special election for Brown's unexpired council term.

{¶ 2} Michael Beazley, the Clerk of the Toledo City Council, requested that respondent Lucas County Board of Elections conduct a special election for Brown's unexpired council term during the May 7, 2002 primary election. Relator, city of Toledo, satisfied all of the applicable requirements to have the special election to fill the vacancy placed on the May 7, 2002 election ballot. Several individuals interested in being candidates for the office obtained blank nominating petitions from the board. On February 28, 2002, after reviewing an opinion from the Toledo Director of Law and receiving the advice of the Lucas County Prosecuting Attorney, the board decided not to certify petitions filed for the unexpired term for the District 4 council seat in the May 7 primary election.

**{¶ 3}** On March 1, 2002, Toledo filed this expedited election action for a writ of mandamus to compel respondents, the board of elections and its members, to conduct a special election on May 7, 2002, to fill the city council vacancy. Respondents filed an answer and a motion for judgment on the pleadings, and the parties filed evidence and briefs pursuant to the expedited election schedule in S.Ct.Prac.R. X(9). This cause is now before the court for a consideration of the merits.

Motion for Judgment on the Pleadings

**{¶ 4}** Respondents, Lucas County Board of Elections and its members, request judgment on the pleadings under Civ.R. 12(C). In order to be entitled to dismissal under Civ.R. 12(C), it must appear beyond doubt that Toledo can prove no set of facts warranting the requested relief, after construing all material factual allegations in the complaint and all reasonable inferences therefrom in the city's favor. *State ex rel. Brantley v. Ghee* (1998), 83 Ohio St.3d 521, 522-523, 700 N.E.2d 1258.

**{¶ 5}** We deny the motion because, like other procedural motions, the motion is inappropriate in expedited election cases filed here. See, *e.g., State ex rel. Yiamouyiannis v. Taft* (1992), 65 Ohio St.3d 205, 206, 602 N.E.2d 644. Under S.Ct.Prac.R. X(9), the presentation of evidence and briefs on the merits in expedited election cases is provided in lieu of a S.Ct.Prac.R. X(5) determination, making procedural motions generally inapplicable. *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections* (1999), 86 Ohio St.3d 107, 111, 712 N.E.2d 696.

**{¶ 6}** In addition, even if S.Ct.Prac.R. X(5) were applicable here, respondents' motion was inappropriate. S.Ct.Prac.R. X(5) requires that any motion for judgment on the pleadings be filed "at the same time an answer is filed." Respondents filed their motion *four days after* their answer was filed.

**{¶ 7}** Therefore, we deny respondents' motion for judgment on the pleadings and consider the contentions raised therein in our decision on the merits.

Merits:  Preliminary Issues

**{¶ 8}** Respondents initially assert that Toledo is not entitled to the requested writ of mandamus because no nominating petitions have yet been filed with the board by any candidate to run in any municipal election, Toledo is not authorized to institute a mandamus action, and Toledo lacks standing to bring this mandamus action.

**{¶ 9}** Respondents' claims lack merit.  First, it is evident that as of February 28, 2002, the board expressly declared that it would not conduct a municipal election for the unexpired term of the District 4 council seat.  As a consequence thereof, prospective candidates and other injured persons or entities did not need to try to file or wait for someone to file nominating petitions for an election that respondents had already ruled would not occur before they could challenge the board's action.  See, *e.g.*, *State ex rel. White v. Cleveland* (1973), 34 Ohio St.2d 37, 63 O.O.2d 79, 295 N.E.2d 665, paragraph two of the syllabus (request for records not required before bringing mandamus action if circumstances establish that request would be futile or unavailing); *State ex rel. Cincinnati Enquirer v. Krings* (2001), 93 Ohio St.3d 654, 659, 758 N.E.2d 1135; *State ex rel. Cotterman v. St. Marys Foundry* (1989), 46 Ohio St.3d 42, 44, 544 N.E.2d 887 ("While it is true that mandamus relief will be denied if administrative avenues are not exhausted, * * * it is also true that a person need not pursue administrative remedies if such an act would be futile").

**{¶ 10}** Given the board's February 28, 2002 decision, some prospective candidates were undoubtedly discouraged from filing petitions for an election that the board would not conduct.  Toledo need not have waited for candidates to have filed petitions to challenge the board's ruling by way of mandamus.  See *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 291-292, 649 N.E.2d 1205, quoting *State ex rel. Smart v. McKinley* (1980), 64 Ohio St.2d 5, 6, 18 O.O.3d 128, 412 N.E.2d 393 ("Concerning the third prerequisite for a writ *

* *, given the proximity of the election, an injunction would arguably not constitute an adequate remedy because any 'appellate process would last well past the election' ").

{¶ 11} Respondents next assert that the city is authorized to bring a mandamus action in only two ways, neither of which applies here. But respondents cite no persuasive, applicable authority for this proposition. Sections 111 and 115 of the Toledo Charter merely specify those instances when the Director of Law has a mandatory duty to prosecute actions on behalf of the city in general and to institute mandamus actions due to an officer's failure to perform a duty in particular. Neither charter section nor the statutes cited by the board and its members purport to preclude the law director from, in the exercise of discretion, seeking a writ of mandamus in other instances on behalf of the city. See, *e.g.,* Toledo Charter Section 109, providing that the Director of Law or City Attorney "shall prosecute or defend suits for and in behalf of the City," without limiting that authority. In fact, as the city notes, a contrary construction of Section 111 of the Toledo Charter would require that in every lawsuit filed against the city, the law director would have to obtain a council resolution before defending the city in the suit. And R.C. 715.01 specifies that each municipal corporation may "sue and be sued."

{¶ 12} As a final preliminary contention, respondents claim that Toledo lacks standing to bring this action. The applicable test for standing is whether relator would be directly benefited or injured by a judgment in this case, and this test applies to mandamus actions concerning election matters. *State ex rel. Sinay v. Sodders* (1997), 80 Ohio St.3d 224, 226, 685 N.E.2d 754, and cases cited therein. Here, respondents' decision not to conduct the May 7, 2002 special election for the unexpired term of the District 4 council member directly injured the city in attempting to enforce its voter-approved charter provisions concerning filling vacancies in the office of council member. The city has the requisite standing to commence this mandamus action because of its undeniable interest in having the

election proceed pursuant to the pertinent charter provisions. See *Sinay*, 80 Ohio St.3d at 226, 685 N.E.2d 754, where we held that a township and its board of trustees had standing as relators to commence a mandamus action regarding an election matter; see, also, *State ex rel. Bedford v. Cuyahoga Cty. Bd. of Elections* (1991), 62 Ohio St.3d 17, 577 N.E.2d 645 (home-rule city entitled to writ of mandamus to compel board of elections and Secretary of State to place on ballot advisory election on issue of subsequent charter amendments).

Mandamus: Constitutionality of Charter Provisions Concerning Vacancies in Municipal Offices

{¶ 13} Toledo requests a writ of mandamus to compel the board of elections and its members to conduct the May 7, 2002 special election for the unexpired term of office for the District 4 member of the Toledo City Council. In order to be entitled to the requested extraordinary relief in mandamus, Toledo must establish a clear legal right to the requested extraordinary relief in mandamus, a corresponding clear legal duty on the part of the board and its members, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. N. Olmsted v. Cuyahoga Cty. Bd. of Elections* (2001), 93 Ohio St.3d 529, 532, 757 N.E.2d 314.

{¶ 14} Toledo asserts that it is entitled to the requested extraordinary relief because the election for the unexpired council term is authorized by its charter.

{¶ 15} Municipal elections are matters of local concern, and under the home-rule provisions of Sections 3 and 7 of Article XVIII of the Ohio Constitution, a charter municipality may adopt a method of selecting municipal officials different from that otherwise provided by law. *State ex rel. Haffey v. Miller* (1965), 4 Ohio St.2d 29, 33 O.O.2d 270, 211 N.E.2d 830; *State ex rel. Graham v. Cuyahoga Cty. Bd. of Elections* (1979), 60 Ohio St.2d 123, 124, 14 O.O.3d 349, 397 N.E.2d 1204. Toledo, a charter municipality, through its electors, adopted its own rules concerning municipal elections to fill vacancies for the offices of mayor and council member in Section 15A of the charter:

"If there is a vacancy in the office of Mayor, or member of Council, from a district or at-large, the vacancy shall be filled first by appointment or succession to the office as specified in this Charter and filled for the unexpired term at an election for that purpose as specified below.

"* * *

"If there is a vacancy in the office of a member of Council from a district, the vacancy shall be filled at the next primary or general election occurring more than forty-five (45) but less than one hundred eighty (180) days after the date the vacancy occurred, but if no primary or general election is scheduled during that time period, then the vacancy shall be filled at a special election on the next available special election date as specified in state law occurring more than forty-five (45) days after the vacancy occurred. Each person desiring to become a candidate to fill the unexpired term shall file nominating petitions with the election authorities as provided in this Charter not later than the tenth day following the date on which the vacancy occurred, or on the fortieth day before the date of the election, which is later, provided that when the vacancy occurs fewer than six (6) days before the fortieth day before the election, the deadline for filing shall be the thirty-sixth day before that election."

{¶ 16} Under Section 15A, once District 4 Council Member Brown resigned, a special election was required to be conducted for the unexpired term of her office, with the election held at the same time as the primary election, *i.e.*, May 7, 2002.

{¶ 17} Although charter municipalities such as Toledo can use their home-rule authority to adopt their own system concerning the election of municipal officials, these provisions must not violate constitutional requirements. See, *e.g., Buckeye Community Hope Found. v. Cuyahoga Falls* (1998), 82 Ohio St.3d 539, 543, 697 N.E.2d 181. In other words, "[t]he system or plan to be followed in the nomination and election of the officials of any city is only of interest and concern

to the people within the limits of the city, and * * * [the city] acts within its authority when it adopts its own plan, *provided it violates no constitutional requirement*." (Emphasis added.) *Fitzgerald v. Cleveland* (1913), 88 Ohio St. 338, 357, 103 N.E. 512.

{¶ 18} Respondents claim that Toledo is not entitled to the writ because it cannot establish a clear legal right to the requested relief and a corresponding clear legal duty on their part to provide that relief, since Section 1, Article XVII of the Ohio Constitution requires that all elections for officers other than state or county officers shall be held in odd-numbered years. For the reasons that follow, respondents' claim is meritless, and Toledo is entitled to the writ.

{¶ 19} Section 1, Article XVII of the Ohio Constitution specifies that elections for elective offices other than state and county officers be held in odd numbered years:

"Elections for state and county officers shall be held on the first Tuesday after the first Monday in November in even numbered years; and *all elections for all other elective officers shall be held on the first Tuesday after the first Monday in November in the odd numbered years*." (Emphasis added.)

{¶ 20} This constitutional provision, however, is followed by a specific provision concerning filling vacancies in elective offices:

"Any vacancy which may occur in any elective state office created by Article II or III or created by or pursuant to Article IV of this constitution shall be filled only if and as provided in such articles. Any vacancy which may occur in any elective state office not so created, shall be filled by appointment by the Governor until the disability is removed, or a successor elected and qualified. Such successor shall be elected for the unexpired term of the vacant office at the first general election in an even numbered year that occurs more than forty days after the vacancy has occurred; provided, that when the unexpired term ends within one year immediately following the date of such general election, an election to fill such

unexpired term shall not be held and the appointment shall be for such unexpired term. *All vacancies in other elective offices shall be filled for the unexpired term in such manner as may be prescribed by this constitution or by law*." (Emphasis added.) Section 2, Article XVII of the Ohio Constitution.

"Where provisions of the Constitution address the same subject matter, they must be read *in pari materia* and harmonized if possible." *Toledo Edison Co. v. Bryan* (2000), 90 Ohio St.3d 288, 292, 737 N.E.2d 529. "Constitutional and statutory provisions should, if possible, be so construed as to give them reasonable and operable effect." *State ex rel. Grace v. Franklin Cty. Bd. of Elections* (1948), 149 Ohio St. 173, 177, 36 O.O. 508, 78 N.E.2d 38.

**{¶ 21}** In so construing the pertinent constitutional provisions here, it is evident that Section 1, Article XVII of the Ohio Constitution governs only regularly recurring elections and is inapplicable to elections to fill vacancies in municipal offices where the municipal charter prescribes an electoral process in those circumstances. This gives full effect to both Section 1, Article XVII, which provides that regularly recurring elections for municipal offices are held on the first Tuesday after the first Monday in November in odd-numbered years, and Section 2, Article XVII, which provides that elections for vacancies in elective offices other than elective state offices shall be filled for the unexpired term in the manner prescribed either by the Constitution *or by law*, with the election prescribed here by law, *i.e.*, the Toledo Charter.

**{¶ 22}** This conclusion comports with precedent. In *Jones v. Cleveland* (1932), 124 Ohio St. 544, 548-549, 179 N.E. 741, we held that a Cleveland charter provision for a special election to fill vacancies thereafter occurring in the office of mayor did not violate Section 1, Article XVII of the Ohio Constitution even though the special municipal elections could be held in even-numbered years:

"Section 1 of Article XVII of the Constitution of Ohio has to do only with regularly recurring elections. Section 2 of that article prescribes the method of

filling vacancies in elective state offices, which, under conditions stated, is by election for the unexpired term, and then provides that 'all vacancies in other elective offices shall be filled for the unexpired term in such manner as may be prescribed by law.' Municipal offices are included in 'other elective offices.' *Hence the constitutional requirement as to the time of election 'in odd numbered years' can have no reference whatever to any election for the purpose of filling a vacancy, for it is specifically provided that vacancies shall be filled 'in the manner provided by law.'* The contention that vacancies in elective offices cannot be filled by election becomes absurd when it is observed that the Constitution itself provides for the filling of vacancies in state offices by election.

"*A charter provision authorized by the Constitution itself has the force and effect of law governing and controlling the affairs of the city.* Certainly, having the power to determine its form of government, the functions and powers of its officers and the manner of their selection, *the municipality may by the same method determine the manner of filling a vacancy occurring in any such office.*"[1] (Emphasis added.) See, *e.g.*, 1972 Ohio Atty.Gen.Ops. No. 72-001, where the Attorney General concluded that "[t]hose portions of a village charter which provide for the regular election of members of council in odd numbered years, but which provide for a transition from the old form of government to the new charter form by a special election of members of council in an even numbered year, are not inconsistent with Article XVII, Section 1 of the Constitution of the State of Ohio, and are valid."

---

1. The language of Section 2, Article XVII of the Ohio Constitution quoted in *Jones* was amended in 1969 to provide, "All vacancies in other elective offices shall be filled for the unexpired term in such manner as may be prescribed BY THIS CONSTITUTION OR by law." (Capitalization *sic*.) House Joint Resolution No. 26, 133 Ohio Laws, Part III, 3053, 3054. The stated purpose of this amendment was to provide for the elimination of short-term elections of state officers to fill a vacancy, where the remainder of the term is less than one year. *Id.* at 3053.

**{¶ 23}** Similarly, the Toledo Charter recognizes that regularly recurring elections for municipal elective officers in Toledo, *i.e.*, the mayor and members of council, must be conducted, in accordance with Section 1, Article XVII of the Ohio Constitution, "on the first Tuesday after the first Monday in November in odd-numbered years." Toledo Charter Section 11. Nevertheless, Section 15A of the Toledo Charter, as authorized by Section 2, Article XVII, as well as Sections 3 and 7, Article XVIII of the Ohio Constitution, further permits special elections to fill vacancies in the offices of mayor and council member to be held in even-numbered years.

**{¶ 24}** This construction of the applicable election provisions is also consistent with the rule that "laws relative to filling vacancies in elective offices will be construed so as to give the people the opportunity to choose at the earliest possible time the successor to an official they have previously chosen." *State ex rel. Harsha v. Troxel* (1932), 125 Ohio St. 235, 238, 181 N.E. 16. By authorizing the requested election to proceed pursuant to the charter in 2002, Toledo electors will be given the opportunity to choose a successor to former District 4 Council Member Brown at a significantly earlier time.

**{¶ 25}** Moreover, the Secretary of State's alleged opinion to the contrary, which the board of elections claims to have relied upon, does not require a different conclusion. It is true that we will accord greater weight to the interpretation of the Secretary of State where an election statute is subject to two different but equally reasonable interpretations. See *State ex rel. Oster v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 480, 486, 756 N.E.2d 649, and the various cases cited by the board and its members in their merit brief. Here, however, we are not interpreting an election statute; we are instead interpreting constitutional and charter provisions.

**{¶ 26}** In addition, the Secretary of State's 1998 memorandum, relied upon by the board of elections, does not require denial of the writ. In that memorandum, the issue decided was whether Section 1, Article XVII of the Ohio Constitution

precluded unexpired term elections on November 3, 1998, for vacancies in offices of charter municipalities whose charters provided that unexpired term elections be held at "the next general election." Because the "next general election" for municipal officers is held in odd-numbered years, see R.C. 3501.02(D) and *State ex rel. Ferguson v. Brown* (1965), 2 Ohio St.2d 235, 236, 31 O.O.2d 459, 208 N.E.2d 129, holding a general election on November 3, 1998, manifestly violated not only Section 1, Article XVII of the Ohio Constitution, but arguably also the charter provisions themselves. In this case, by contrast and in accordance with the municipal charter, the unexpired term election is a special election to be held during the primary election in May 2002.

{¶ 27} Finally, the cases cited by the board are either distinguishable or unpersuasive. See *State ex rel. Higley v. Shale* (1940), 137 Ohio St. 311, 18 O.O. 288, 29 N.E.2d 214; *Harsha*, 125 Ohio St. 235, 181 N.E.16*; Grace*, 149 Ohio St. 173, 36 O.O. 508, 78 N.E.2d 38; *Ferguson*, 2 Ohio St.2d 235, 31 O.O.2d 459, 208 N.E.2d 129. *Harsha, Grace,* and *Ferguson* involved state or county officers instead of municipal officers, and in *Higley*, the court considered neither home-rule charter provisions nor Section 2, Article XVII of the Ohio Constitution in deciding the case.

{¶ 28} Based on the foregoing, Toledo has established its entitlement to the requested extraordinary relief. The board of elections erred in deciding not to conduct a May 7, 2002 election for the unexpired term of Brown's council seat. We grant a writ of mandamus to compel the board of elections and its members to conduct a special election on May 7, 2002, for the unexpired term for District 4 council member of the city of Toledo. In addition, given the delays caused by the board and its members' decision, as well as their request for a five-day extension to file their merit brief and evidence in this case, the filing deadline in Section 15A of the Toledo Charter for candidates to file nominating petitions is March 28, 2002. Therefore, we further hold that prospective candidates for the unexpired council

term are given until the thirty-sixth day (rather than the fortieth day—March 28) before the May 7 election, *i.e.*, by Monday, April 1, 2002, to file their nominating petitions with the board. Cf. *Morris v. Macedonia* (1994), 71 Ohio St.3d 52, 58, 641 N.E.2d 1075, where we shortened the notice period of Sections 8 and 9, Article XVIII of the Ohio Constitution when the delay in placing a charter amendment on the ballot was caused by a city council's failure to examine petition signatures and render a prompt determination on their sufficiency when the council had ample time to do so.

*Writ granted.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————

*Barbara E. Herring*, Toledo Director of Law, *Adam Loukx*, Senior Attorney, and *Lora Manon*, for relator.

*Julia R. Bates*, Lucas County Prosecuting Attorney, *John A. Borell* and *Lance M. Keiffer*, Assistant Prosecuting Attorneys, for respondents.

———————————