[Cite as *Cincinnati v. State*, 2022-Ohio-1019.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI, | : | TRIAL NO. A-1902786 |
| and | : | |
| MAYOR JOHN CRANLEY, | : | |
| Plaintiffs, | : | |
| vs. | : | |
| STATE OF OHIO, | : | |
| Defendant. | : | |

| | | |
|---|---|---|
| | : | |
| CITY OF CINCINNATI, ex rel. THOMAS E. BRINKMAN, JR., | : | APPEAL NOS. C-210343 C-210353 |
| Relator-Appellee-Cross-Appellant, | : | TRIAL NOS. A-1902786 A-1903779 |
| vs. | : | |
| CITY OF CINCINNATI, | : | |
| and | : | *OPINION.* |
| ANDREW W. GARTH, in his official capacity as Cincinnati City Solicitor, | : | |
| | : | |
| Respondents-Appellants-Cross-Appellees. | : | |

Civil Appeals From:   Hamilton County Court of Common Pleas

Judgment Appealed From Is:   Reversed and Cause Remanded in C-210343; Affirmed in C-210353

Date of Judgment Entry on Appeal: March 30, 2022


*The Law Firm of Curt C. Hartman* and *Curt C. Hartman*, and *Finney Law Firm, LLC*, and *Christopher P. Finney*, for Relator-Appellee-Cross-Appellant,

*Andrew Garth*, City Solicitor, *Jacklyn Gonzalas Martin*, *Emily Smart Woerner* and *Kevin M. Tidd*, Assistant City Solicitors, for Respondent-Appellant-Cross-Appellee.

Per Curiam.

{¶1}  These consolidated appeals arise from a taxpayer action instituted by relator, Thomas E. Brinkman, against respondents, the city of Cincinnati and the then solicitor for the city acting in her official capacity, collectively referred to as "the city." Brinkman sought to enjoin an alleged abuse of corporate powers that began when the solicitor filed a civil action against the state of Ohio on behalf of the city and its mayor without obtaining Cincinnati City Council's approval.  Brinkman also sought a declaration that the solicitor lacked the authority to file any civil action on behalf of the city and its officials without prior authorization by council.  The trial court granted the requested injunctive relief but refused to grant declaratory relief.

{¶2}  In the first appeal, numbered C-210343, the city[1] appeals the part of the order granting injunctive relief, which if not reversed prevents the city from continuing its lawsuit against the state.  In the second appeal, numbered C-210353, Brinkman appeals the part of the order denying his claim for declaratory relief.  Because Cincinnati's charter (also referred to as "the city's charter" or "the Charter") allows the solicitor to file a civil action on behalf of the city and its officials without prior authorization of council, we hold the trial court erred by granting injunctive relief.  In all other respects, we affirm the trial court's judgment.

## I. Background Facts

{¶3}  In June 2019, the city through its solicitor, at that time Paula Boggs Muething, filed a lawsuit against the state of Ohio in the Hamilton County Court of Common Pleas challenging the constitutionality and legality of certain amendments

---

[1] Brinkman suggests the city is seeking an advisory opinion through its appeal because the notice of appeal filed by the solicitor named the city as the appellant and did not separately list as an appellant the solicitor in the solicitor's official capacity. We do not share his concern, because the action is one against the solicitor's office and " 'is treated as an action against the entity itself.' " (Internal citation omitted.) *State ex rel. Estate of Miles v. Village of Piketon*, 121 Ohio St.3d 231, 2009-Ohio-786, 903 N.E.2d 311, ¶ 23.

to R.C. 9.68 (the "R.C. 9.68 lawsuit"). That statute concerns the preemption of local firearm regulations and authorizes a civil action by those adversely affected by local firearm regulations.

{¶4} The record establishes that city council did not pass an ordinance or resolution authorizing the solicitor to file the R.C. 9.68 lawsuit, but the city manager and the city's mayor did authorize the solicitor to file the lawsuit.

{¶5} Brinkman, a taxpayer and resident of Cincinnati, submitted a taxpayer demand letter to the solicitor concerning the R.C. 9.68 lawsuit. Brinkman took the position that the city's power to sue could only be exercised by the solicitor upon authorization by city council. Because city council did not authorize the filing of the R.C. 9.68 lawsuit, Brinkman contended the solicitor had acted in abuse of municipal corporate power. He requested the solicitor bring an action under R.C. 733.56 to enjoin herself as solicitor from continuing with the R.C. 9.68 lawsuit.

{¶6} The solicitor denied Brinkman's request, citing the city's charter which provides the solicitor "shall represent the city in all proceedings in court." Brinkman then filed a taxpayer action in his name, but on behalf of the city, naming as respondents the city and its solicitor acting in her official capacity. Brinkman alleged the solicitor had abused municipal corporate powers and sought both injunctive and declaratory relief. Brinkman's taxpayer action was consolidated with the R.C. 9.68 lawsuit in the Hamilton County Court of Common Pleas.

{¶7} Brinkman and the city filed cross-motions for summary judgment on Brinkman's claims. The trial court reviewed local and state law provisions concerning the filing of lawsuits on behalf of a municipal corporation and determined that Brinkman was entitled to injunctive relief. The court further determined that Brinkman lacked standing to bring a claim for declaratory relief in his taxpayer action.

Consequently, the trial court denied the city's motion for summary judgment, granted Brinkman's motion for summary judgment in part, and enjoined the city from continuing with the R.C. 9.68 lawsuit. The city and Brinkman both appeal from that order.

## I. The City's Appeal

{¶8} In its sole assignment of error, the city argues the trial court erroneously denied its motion for summary judgment and granted summary judgment to Brinkman on the claim for injunctive relief. We review the trial court's ruling on summary judgment de novo, applying the standards set forth in Civ.R. 56. *See Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8.

{¶9} As a taxpayer, Brinkman sought "an order of injunction to restrain * * * the abuse of [] [municipal] corporate powers * * *." *See* R.C. 733.56. The abuse of corporate powers within the contemplation of R.C. 733.56 "includes the unlawful exercise of powers possessed by the [municipal] corporation, as well as the assumption of power not conferred." *Elyria Gas & Water Co. v. Elyria*, 57 Ohio St. 374, 49 N.E. 335 (1898), paragraph six of the syllabus, quoted in *State ex rel. Fisher v. City of Cleveland*, 109 Ohio St.3d 33, 2006-Ohio-1827, 845 N.E.2d 500, ¶ 19, and *Porter v. Oberlin*, 1 Ohio St.2d 143, 146, 205 N.E.2d 363 (1965).

{¶10} The city's charter, adopted by the citizens of Cincinnati under home rule authority, sets forth the form of the city's government and how the powers of the government should be exercised. The first paragraph of the Charter, which governs the subsequent provisions, provides:

> The city shall have all powers of local self-government and home rule
> and all other powers possible for a city to have under the constitution of
> the state of Ohio. The city shall have all powers that now are or hereafter

5

may be granted to municipalities by the laws of the state of Ohio. All such powers shall be exercised in the manner prescribed in this charter, or if not prescribed herein, in such manner as shall be provided by ordinance of the council.

Cincinnati Charter, Article I.

{¶11} The interpretation of a city's charter is an issue of law that this court reviews de novo. *See McQueen v. Dohoney*, 1st Dist. Hamilton No. C-130196, 2013-Ohio-2424, ¶ 41. We apply the general rules of statutory construction because the charter does not provide otherwise. *See id.* at ¶ 42. "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." R.C. 1.42.

{¶12} Further, when interpreting the Charter, we are directed by the case law that has developed specifically on the issue at hand—the powers of a municipality's chief legal officer with regard to lawsuits. *See, e.g., McQueen* at ¶ 43 (Applying case law "developed specifically on interpreting charter initiative and referendum provisions.").

{¶13} It is not disputed that the city has the power to sue. *See* R.C. 715.01. Thus, the only question is whether the solicitor instituted the lawsuit consistent with the law, including the city's charter.

{¶14} The Ohio Supreme Court has addressed charter provisions related to the authority of a city's chief legal officer to file lawsuits without prior approval by city council. *See State ex rel. City of Toledo v. Lucas Cty. Bd. of Elections*, 95 Ohio St.3d 73, 765 N.E.2d 854 (2002). In *Toledo*, the court reviewed whether Toledo's law director had authority under the city's charter to institute a mandamus action on

6

behalf of the city to compel the Lucas County Board of Elections and its members to conduct a special election to fill a vacancy on Toledo's city council. That mandamus action had not been previously approved by city council nor did it involve an officer's failure to perform a specific duty for which the law director was required to institute a mandamus action. *See id.* at 75. The court found the mandamus action instituted by the law director authorized. *Id.*

{¶15} In support of its decision, the court noted that Toledo Charter Section 109 provided that the city's chief legal officer " 'shall prosecute or defend suits for and in behalf of the City,' without limiting that authority." The other local provisions and state provisions on the matter merely specified when the law director had a mandatory duty with respect to lawsuits. *Id.* In light of the unrestricted language in Section 109 and a concern over the impracticality of obtaining prior approval in some circumstances, the court concluded that the charter vested the city's chief legal officer with authority to seek a writ of mandamus on behalf of the city in the "exercise of discretion." *Id.*

{¶16} The Ninth District Court of Appeals reviewed whether a charter provision authorized the chief legal officer of the city of Fairlawn to bring suit on behalf of the city without the specific authorization of the city's mayor or council. *City of Fairlawn v. Fraley*, 9th Dist. Summit No. 9827, 1981 Ohio App. LEXIS 13742, *14 (Feb. 11, 1981). The Fairlawn Charter provides in relevant part that "The Director of Law * * * shall prosecute for all offenses against the ordinances of the municipality and such offenses against the laws of Ohio as may be required of him." *Id.* The court concluded that no authorization was required for the law director to bring suit for offenses against municipal ordinances because the first phrase of this sentence was not restricted by the phrase "as may be required of him." *Id.*

{¶17}  Cincinnati's charter, at the time the solicitor filed the R.C. 9.68 lawsuit, provided the following with respect to the authority of  the city solicitor, a part of the executive branch of city government and the chief legal officer of the city:

> The city manager shall appoint a city solicitor. No person shall be eligible to the office who is not an attorney at law, duly admitted to practice in this state. The solicitor shall serve the mayor, council, officers and boards of the city as legal counsel and attorney, and *shall represent the city in all proceedings in court*. The solicitor *shall act as prosecuting attorney in the municipal court*. The solicitor shall perform *all other* duties now or hereafter imposed upon city solicitors by the laws of the state, *unless* otherwise provided by ordinance of the council, and such other duties as the council may impose upon the solicitor consistent with the office of city solicitor. The solicitor shall appoint his or her assistants and fix their salaries, but the maximum number of assistants and the total amounts of the assistants' salaries shall be fixed by council. The assistants shall hold their offices at the pleasure of the solicitor.

(Emphasis added.)  Cincinnati Charter, Article IV, Section 5.

{¶18}  Cincinnati's charter provision involving the authority of the city's chief legal officer differs from Section 109 of Toledo's charter.   Cincinnati's charter provision uses the words "shall represent the city in all proceedings in court" instead of "shall prosecute or defend suits for and in behalf of the City."  The word "represent" in this context, however, means the solicitor has the power to determine the city's position. *See City of Cuyahoga Falls v. Robart*, 58 Ohio St.3d 1, 6, 567 N.E.2d 987 (1991) ("[T]he duty to represent the city" involves the "power to determine the city's

position."). Considering the common meaning of the words, we conclude the power to determine the city's position in all proceedings in court is equivalent to the power to "prosecute or defend suits for and in behalf of the City."

{¶19} Moreover, like in Section 109 of Toledo's charter, there is no language in Article IV, Section 5, of Cincinnati's charter directly limiting the authority of the chief legal officer with respect to the officer's representation of the city in lawsuits. Thus, we construe Article IV, Section 5, of the Charter as affording the solicitor discretion to file lawsuits on behalf of the city, even absent authorization by council.

{¶20} Admittedly, Article IV, Section 5, provides council with indirect control over the solicitor's exercise of discretion, because council controls the appropriations for the solicitor's office. ("The solicitor shall appoint his or her assistants and fix their salaries, but the maximum number of assistants and the total amounts of the assistants' salaries shall be fixed by council.") That indirect control is not an issue in this case, because there is no evidence the solicitor has requested an appropriation to pursue the R.C. 9.68 lawsuit, such as an appropriation to hire outside counsel.

{¶21} The trial court, when determining whether an abuse of power occurred, adopted Brinkman's position and construed Article IV, Section 5, of the Charter to be silent on the issue of the solicitor's authority to file lawsuits. The court then turned to general and default state laws, R.C. 715.03 and 733.53, which it interpreted as requiring the solicitor to obtain prior approval from city council before filing a lawsuit.

{¶22} We disagree with the trial court's construction of Article IV, Section 5, of the Charter. While there is a paucity of case law on the issue, we conclude that this case is governed by the principles announced in *Toledo* and *Fairlawn.* The citizens of Cincinnati, by adopting Article IV, Section 5, intended the city's chief legal officer to have discretion to institute lawsuits without the prior authorization of council.

9

{¶23} Consequently, Brinkman failed to show an abuse of the municipal corporate power to sue when the solicitor filed the R.C. 9.68 lawsuit without prior authorization of council. Thus, the trial court erred when resolving the competing motions for summary judgment in favor of Brinkman on the claim for injunctive relief. Accordingly, we sustain the city's assignment of error and reverse the order enjoining the city's solicitor from continuing with the R.C. 9.68 lawsuit.

### III. Brinkman's Appeal

{¶24} Brinkman's assignment of error relates to his claim for declaratory judgment. He argues the trial court erred by refusing to enter a judgment declaring that city council, the legislative authority of the city, must grant authorization for the solicitor to initiate any lawsuit by the city or on behalf of its officials.

{¶25} The trial court determined that Brinkman was limited to seeking injunctive relief, specific performance, or a writ of mandamus in the taxpayer action, because that is the relief specified in R.C. 733.56 through 733.58, the statutes upon which taxpayer actions are based. *See* R.C. 733.59 ("If the village solicitor or city director of law fails, upon the written request of any taxpayer of the municipal corporation, to make any application provided for in sections 733.56 to 733.58 of the Revised Code, the taxpayer may institute suit in his own name, on behalf of the municipal corporation."). Thus, the trial court refused to grant Brinkman declaratory relief due to lack of standing, even though the trial court enjoined the city from continuing with the R.C. 9.68 lawsuit due to the lack of prior authorization from council.

{¶26} We have already held, when disposing of the city's assignment of error, that the city solicitor's filing of the R.C. 9.68 lawsuit was not an abuse of municipal corporate power, even though it was not approved by city council. Considering our

10

resolution of that issue, any error by the trial court in concluding that Brinkman lacked standing to obtain declaratory relief is harmless in this case. *See* Civ.R. 61. Accordingly, we overrule Brinkman's assignment of error.

## IV. Conclusion

{¶27} Because Article IV, Section 5, of Cincinnati's charter provides the city's solicitor with authority to file a civil action on behalf of the city and its officials without prior authorization of council, we hold the trial court erred by granting injunctive relief in this taxpayer action. We reverse the order enjoining the city from continuing with the R.C. 9.68 lawsuit against the state of Ohio, and remand the cause for the trial court to enter a judgment in favor of the city in the taxpayer action and for further proceedings consistent with this opinion. In all other respects, we affirm the trial court's judgment.

Judgment accordingly.

**ZAYAS, P.J.**, **WINKLER** and **BOCK, JJ.**

Please note:

The court has recorded its own entry on the date of the release of this opinion.