[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 417.]

THE STATE EX REL. MOORE *v.* MALONE, CLERK.

[Cite as *State ex rel. Moore v. Malone*, 2002-Ohio-4821.]

*Elections—Referendum sought to prevent city of Cleveland Heights ordinance that extends certain employment benefits to registered same-sex domestic partners of city employees from taking effect—Mandamus to compel clerk of council, inter alia, to determine the number of registered voters at the last general election for municipal officers to be 12,221 and to ascertain the sufficiency of the referendum based on that number—Writ denied, when.*

(No. 2002-0998—Submitted September 9, 2002—Decided September 17, 2002.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶1} On April 15, 2002, the Council of the city of Cleveland Heights, Ohio, adopted Ordinance No. 49-2002, which extends certain employment benefits, including health and dental insurance, to registered same-sex domestic partners of city employees.

{¶2} Relator, Tracie B. Moore, is a taxpayer and elector of Cleveland Heights and a member of a committee of petitioners seeking a referendum on Ordinance No. 49-2002. Under Section 2, Article VIII of the Cleveland Heights Charter, the petitioners had until May 15, 2002, to file a referendum petition signed by not less than 15 percent of city electors to prevent the ordinance from taking effect. Section 4, Article VIII of the charter provides that the sufficiency of petitions, including referendum petitions, filed with the Cleveland Heights Clerk of Council "shall be determined on the basis of the number of registered voters at the last general election for municipal officers."

**{¶3}** On April 15, 2002, Moore contacted respondent Cuyahoga County Board of Elections and requested the number of registered voters in Cleveland Heights at the November 6, 2001 election. An employee in the board's candidates' services department informed Moore that the number was 12,221.

**{¶4}** On April 16, 2002, Moore spoke with a different board employee, who advised her that the number of registered voters in Cleveland Heights at the November 6, 2001 election was 26,410 and that the smaller number was instead the number of Cleveland Heights residents who actually voted at the November 6, 2001 election.

**{¶5}** On April 26, 2002, Francine White, the board's registration secretary, gave the petitioners a voter control report and advised that the report contained only a list of active voters. The report stated that as of October 30, 2001, Cleveland Heights had 28,478 active voters.

**{¶6}** On May 10, 2002, Lynnie Powell, the board's deputy director, informed petitioners that there were 32,122 registered voters in Cleveland Heights on November 30, 2001. On that same day, Powell conferred with the board's director, Thomas L. Jelepis, and the board's interim media and public relations administrator, John Stilliana, and it was determined that the correct number of registered voters at the November 6, 2001 Cleveland Heights election was 35,699. Later, on May 10, 2002, Stilliana informed a city council member affiliated with petitioners that the correct number of registered voters in Cleveland Heights was 35,699. On May 13, 2002, Powell informed petitioners that there were 35,699 registered voters in Cleveland Heights and that her previous report of 32,122 votes was incorrect.

**{¶7}** On May 15, 2002, Moore filed a referendum petition with respondent Cleveland Heights Clerk of Council Thomas K. Malone. According to Sharon E. McGuire, the acting clerk of council at the time the petition was filed, the petition contained 5,271 signatures. Moore stated that the petition contained 5,287

signatures. Moore did not file the petition as evidence to establish that it contained the claimed 5,287 signatures.

**{¶8}** By a letter dated the same day that the petition was filed, the petitioners' lead attorney advised the Cleveland Heights law director that they would seek a writ of mandamus if the clerk of council rejected or refused to certify the petition. In the letter, the petitioners' attorney contended that 28,478—not 12,221—was the correct number of registered voters to determine the sufficiency of the petition.

**{¶9}** On May 10, 2002, the board informed Cleveland Heights that the number of registered voters in Cleveland Heights at the time of the November 6, 2001 municipal election was 35,699, and on May 16, 2002, Director Jelepis confirmed that 35,699 was the correct number.

**{¶10}** On May 17, 2002, Acting Clerk McGuire advised Moore and other members of the referendum petition committee by letter that she was rejecting the petition because it contained an insufficient number of signatures, i.e., the petition failed to contain the signatures of at least 15 percent of the Cleveland Heights electors registered to vote in the last municipal election:

**{¶11}** "I have been informed by the Director of the Cuyahoga County Board of Elections that the number of registered voters in the City of Cleveland Heights at the last municipal election (November, 2001) was 35,699.

**{¶12}** "The number of signers on the petitions submitted to me by your committee on May 15, 2002 was 5,271. Of these signers, 646 signed the petition in advance of the date when a certified copy of Ordinance no. 49-2002 was filed with the City Auditor by the petition committee pursuant to Ohio Revised Code section 731.32.

**{¶13}** "Under the City Charter a referendum petition in Cleveland Heights is effective only if it is signed by at least 15% of the electors registered to vote in the last municipal election and presented to the City Auditor within thirty days of

the date when the subject ordinance was passed by City Council. Based upon the registered voter count given to me by the Cuyahoga County Board of Elections, this means that 5,355 signatures are required for a petition filed at this time.

{¶14} "After consultation with the City Law Department, it is my determination as the City Auditor and Clerk of Council that the petitions are not sufficient on their face to meet the aforesaid City Charter requirement and, therefore, the petitions are rejected. It is my intention to report this to City Council at their next regularly scheduled meeting on May 20, 2002."

{¶15} On May 31, 2002, Moore attempted to file a supplemental petition, which she claimed contained 1,448 additional signatures. Malone refused to accept the supplemental petition for filing because it was the city's interpretation of the charter that "submission to the Board of Elections for verification of the signatures and the possibility of permitted additional time to collect signatures takes place only if the petitions which are filed within the 30 day limit have, on their face, the required 15% signers."

{¶16} On June 14, 2002, Moore filed this action for a writ of mandamus against respondents, Malone and the board of elections. In her complaint, Moore requests a writ of mandamus to compel Malone to (1) "accurately determine the number of 'registered voters at the last general election for municipal officers' to be 12,221"; (2) alternatively, "exclude from the number of 'registered voters at the last general election for municipal officers' those individuals who were ineligible to vote as of November 6, 2001"; (3) "determine the sufficiency of the Petition based on the number of 'registered voters at the last general election for municipal officers,' " as determined by one of the above methods; (4) certify the petition to the city council, if Malone's failure to endorse the petition with a certificate of sufficiency constituted a waiver; and (5) endorse the petition with a certificate and determine the sufficiency of the petition with the supplemental signatures, if

4

Malone's failure to endorse the petition with a certificate of sufficiency did not constitute a waiver.

{¶17} Moore filed a motion for an alternative writ. Respondents subsequently filed motions to dismiss. On July 29, 2002, we granted an alternative writ and issued an expedited schedule for the presentation of evidence and briefs. *State ex rel. Moore v. Malone*, 96 Ohio St.3d 1458, 2002-Ohio-3840, 772 N.E.2d 641.

{¶18} In the evidence filed, Director Jelepis testified that all of the persons listed in the Cleveland Heights poll books for the November 6, 2001 election were considered by the board to be registered voters. Two persons listed on the poll books for the November 6, 2001 election in Cleveland Heights had moved to new cities before the election, and they voted provisional ballots pursuant to R.C. 3503.16 at that election. In addition, based on the December 6, 2001 report by the city health officer, two others on the Cleveland Heights poll books for the November 6, 2001 election died before that election.

Mandamus

{¶19} In her merit briefs, Moore restricts her claims for relief to a writ of mandamus to compel Malone to determine the number of registered voters at the last general election for municipal officers to be 12,221 and to ascertain the sufficiency of the referendum petition based on that number, or, in the alternative, to exclude from the 35,699 registered-voter total provided by the board and relied upon by Malone those persons who were deceased and those who were not residents of Cleveland Heights at the time of the November 6, 2001 election and to ascertain the sufficiency of the referendum petition based on that number.

{¶20} In order to be entitled to a writ of mandamus, Moore must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of Malone to provide it, and the lack of an adequate remedy in the ordinary

course of the law. *State ex rel. N. Olmsted v. Cuyahoga Cty. Bd. of Elections* (2001), 93 Ohio St.3d 529, 532, 757 N.E.2d 314.

Registered Voters at the Last General Election for Municipal Officers

{¶21} Moore's preeminent claim is that Malone and the board erred in construing the charter phrase "registered voters at the last general election for municipal officers" to include electors who did not actually vote at that election.

{¶22} Section 2, Article VIII of the Cleveland Heights Charter governs referenda of municipal ordinances and provides, "When there shall have been filed a *petition signed by not less than fifteen percent of the electors of the City* within thirty days after any ordinance or other measure shall have been passed by the Council, ordering that such ordinance or other measure be submitted to the electors of the City for their approval or rejection, the Clerk shall, at the next regular meeting of Council, certify such petition to the Council." (Emphasis added.) If council does not then repeal the ordinance, it must submit the ordinance to a vote of the electorate, and the ordinance will not become effective until approved by a majority of those voting on it. Section 2, Article VIII, Cleveland Heights Charter.

{¶23} Under Section 4, Article VIII of the charter, "[t]he sufficiency of the number of signers to any initiative, referendum, or recall petition, shall be determined on the basis of the number of registered voters at the last general election for municipal officers."

{¶24} Moore asserts that Malone and the board misinterpreted the phrase "registered voters at the last general election for municipal officers" and, in particular, the included phrase "registered voters" in determining the sufficiency of the referendum petition. Moore contends that these "registered voters" are those persons who were registered to vote *and did vote* at the November 6, 2001 election. Respondents claim, however, that the phrase includes all of those registered to vote at the November 6, 2001 election.

6

{¶25} "Registered voters" is not defined in the charter. "Undefined language used in a municipal charter must be construed according to its ordinary and common usage." *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 475, 764 N.E.2d 971; *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 5, 716 N.E.2d 1114. The ordinary and common meaning of "registered voter" is "[a] person who is qualified to vote and whose name is recorded in the voting district where he or she resides." Black's Law Dictionary (7th Ed.1999) 1287; see, also, *S. Salt Lake v. Salt Lake Cty.* (Utah 1996), 925 P.2d 954, 957-958.

{¶26} The last general election for municipal officers was the November 2001 election. See, e.g., R.C. 3501.02(D); *State ex rel. Toledo v. Lucas Cty. Bd. of Elections* (2002), 95 Ohio St.3d 73, 80, 765 N.E.2d 854; Section 1, Article VII, Cleveland Heights Charter.

{¶27} Therefore, the charter phrase "registered voters at the last general election for municipal officers" means those persons who were registered to vote at the November 2001 municipal election rather than those who actually voted at that election.

{¶28} In fact, Moore herself testified that she believed that the phrase "registered voters" means "[p]eople who are registered to vote." And her lead counsel also previously represented to the city that "registered voters" included a number greater than the total of actual voters at the November 2001 election.

{¶29} Moreover, when the framers of the Cleveland Heights Charter intended to limit the number of signatures required for a valid election petition to the number of people actually voting, they did so with appropriate language. Cf. Section 3, Article VII, Cleveland Heights Charter (petitions for candidates for elective municipal offices "shall be signed by electors of the Municipality equal in number to not less than two percent of *the total number of voters voting at the last regular election of municipal officers*") and Section 4, Article VIII, Cleveland Heights Charter ("When any legislative measure resulting from any initiative or

referendum petition is approved by a *majority of the electors voting thereon*, such legislative measure shall become effective at the time fixed therein * * *"). (Emphasis added.) By not including comparable language in the portion of Section 4, Article VIII of the charter at issue here, it is evident that the framers intended that the phrase "registered voters at the last general election for municipal officers" be construed, in accordance with its common usage, to include all persons registered to vote at that election and not simply those who actually voted.

{¶30} Moore's reliance on the statutory definition of "voter" from R.C. 3501.01(O) is misplaced. Even assuming Moore's claim that that definition is incorporated in the charter, the key phrase at issue here is "registered voters at the last general election for municipal officers," which is not given a technical meaning by R.C. 3501.01. Cf. R.C. 1.42 ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, should be construed accordingly").

{¶31} In fact, as aptly noted by Malone, even other statutes establish the error of Moore's requested construction. R.C. 3503.23(B)(2) provides, "On the day of a general or primary election, precinct election officials shall * * * [a]t 11 a.m. and 4 p.m. place a mark, on the official registration list posted at the polling place, before the name of those *registered voters who have voted*." (Emphasis added.) If Moore were correct, the phrase "who have voted" in R.C. 3503.23(B)(2) would be unnecessary.

{¶32} Therefore, contrary to Moore's assertions, Malone and the board correctly interpreted "registered voters at the last general election for municipal officers" in the Cleveland Heights Charter to mean those persons recorded as eligible to vote at the November 2001 general election instead of those who actually voted in that election. Consequently, Moore is not entitled to a writ of mandamus to compel Malone to ascertain the sufficiency of the referendum petition based on

the claimed 12,221 registered voters who actually voted at the November 6, 2001 Cleveland Heights election.

Excluding Deceased Persons and Nonresidents from "Registered Voters"

**{¶33}** Moore argues, in the alternative, that she is entitled to a writ of mandamus to compel Malone to exclude from the 35,699 registered-voter total given to her by the board those persons who were registered to vote at the November 6, 2001 election but were either deceased or had moved from the city before the date of the election.

**{¶34}** Moore introduced evidence here that two persons registered as voters for the Cleveland Heights November 6, 2001 election had died before that election and that two other persons registered to vote in that election had moved from Cleveland Heights by the November 6, 2001 election.

**{¶35}** It is true that boards of elections must remove ineligible electors from voter registration lists "in accordance with law and directives of the secretary of state." R.C. 3501.11(U).

**{¶36}** Nonetheless, even assuming that the board erred in including these four decedents and nonresidents in the total of registered voters in Cleveland Heights at the last general election for municipal officers, the petition still contained insufficient signatures. Fifteen percent of 35,695 is still 5,355, and the petition contained, at most, only 5,287 signatures.

**{¶37}** In addition, the burden is on Moore to establish her entitlement to extraordinary relief in mandamus. *N. Olmsted*, 93 Ohio St.3d at 532, 757 N.E.2d 314. We will not infer the presence of other deceased or nonresident persons on the list of registered voters in the absence of proof thereof by Moore. Cf. *In re Election Contest of December 14, 1999 Special Election* (2001), 91 Ohio St.3d 302, 305, 744 N.E.2d 745 (defeated candidate had to establish by clear and convincing evidence in election contest case that claimed irregularities affected enough votes to change or make uncertain the result of the special election); *State ex rel. Oster v.*

*Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 480, 485, 756 N.E.2d 649 (failure to specifically challenge signatures of referendum petition in written protest waived claims).

**{¶38}** Therefore, even if Moore is entitled to a reduction by four of the total of 35,699 registered voters in Cleveland Heights at the November 6, 2001 election, the referendum petition is still insufficient. Mandamus will not issue to compel a vain act. *State ex rel. Bona v. Orange* (1999), 85 Ohio St.3d 18, 22, 706 N.E.2d 771. Accordingly, Moore's alternative claim is likewise meritless.

Other Possible Claims

**{¶39}** Moore raised other claims in her complaint, but she waived them by not pursuing these claims in her merit brief, where she specifically restricted her claims to those previously discussed.

**{¶40}** Additionally, the fact that Moore claims that she and the other petitioners received varying numbers from the board of elections regarding the applicable number of registered voters makes no difference. Any mistaken advice by the board did not estop the board or Malone from invalidating the petition. *Ditmars*, 94 Ohio St.3d at 476, 764 N.E.2d 971 ("Estoppel does not apply against election officials in the exercise of governmental functions").

Conclusion

**{¶41}** Based on the foregoing, Moore has established neither a clear legal right to the requested writ of mandamus nor a corresponding clear legal duty on the part of Malone and the board to provide it. Therefore, we deny the writ.

Writ denied.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

—————————————

David R. Langdon; Chester, Willcox & Saxbe, L.L.P., and Donald C. Brey; American Family Association Center for Law & Policy, Brian Fahling and Michael J. DePrimo, for relator.

John H. Gibbon, Cleveland Heights Law Director; Walter & Haverfield, L.L.P., and Kenneth A. Zirm, for respondent Malone.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Reno J. Oradini, Jr., Assistant Prosecuting Attorney, for respondent Cuyahoga County Board of Elections.

_____