THE STATE EX REL. CINCINNATI ENQUIRER, DIVISION OF GANNETT SATELLITE INFORMATION NETWORK, INC. *v.* CINCINNATI BOARD OF EDUCATION ET AL.

[Cite as *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Cincinnati Bd. of Edn.,* 99 Ohio St.3d 6, 2003-Ohio-2260.]

(No. 2002–1844—Submitted April 15, 2003—Decided May 7, 2003.)

**Per Curiam.**

{¶ 1}  Respondent Cincinnati Board of Education contracted with the International Center on Collaboration, Inc., a Florida nonprofit corporation, to help the board with superintendent evaluations and setting goals for the district.  In June or July 2002, International Center retained respondent Proact Search, Inc., to assist the board in its search for a new superintendent.

{¶ 2}  By letter dated July 12, 2002, a reporter for relator, the Cincinnati Enquirer, a division of the Gannett Satellite Information Network, Inc., requested from the Cincinnati School District "any resumes, documents, candidate profiles, letters, memos, e-mails, correspondence, videos and/or other items related to Cincinnati Public Schools' superintendent search of 2002."  The reporter advised the school district that she was requesting these records under R.C. 149.43, Ohio's Public Records Act, and that the district should treat the request "as a standing Ohio open records request and provide copies as relevant items * * * arrive."  In August 2002, the Enquirer submitted a second request for all documents related to the superintendent search.

{¶ 3} Proact prepared a profile to be used to solicit applicants for the Superintendent of the Cincinnati School District. The profile specified that "all formal applications will be made public." Proact subsequently narrowed the field of applicants for superintendent to six finalists. After one of those finalists withdrew because of concerns that the applicant's name would become public, Proact assigned numbers to the remaining five finalists and made reservations for them under pseudonyms at the hotel where interviews were to be conducted.

{¶ 4} Proact instructed the five finalists to bring relevant application materials with them to their interviews with the board during a September 2002 executive session. At the beginning of the interviews, the board president explained to the finalists, pursuant to a script prepared by Proact, that any materials they decided to leave with the board or Proact would be made public to requesters under the Public Records Act. Only one of the applicants elected to leave his materials in the possession of the board and Proact at the conclusion of the interview.

{¶ 5} After the interviews were completed, the application materials submitted by the other four finalists were given back to them. The finalists had provided those materials to the board during their interviews, conducted in executive session, upon the condition that the materials would not be left with the board or Proact and would be returned to the finalists at the close of the interviews. No copies of those materials were provided to the board at any time outside the executive session except for those later provided to the board by the superintendent ultimately hired, for placement in his official file.

{¶ 6} In response to the Enquirer's requests, the board produced materials submitted by the new superintendent as well as the one finalist who had left his materials with the board after his interview. The board, however, refused to give the Enquirer the materials submitted by the other three finalists because neither the board nor Proact had those materials.

{¶ 7} In October 2002, the Enquirer filed this action for a writ of mandamus to compel respondents, the board and Proact, to make the requested records available for inspection and copying. The Enquirer also requested attorney fees and a civil forfeiture of $1,000 under R.C. 149.351(B)(2). After respondents filed an answer, we granted an alternative writ on the Enquirer's R.C. 149.43 claim and dismissed the Enquirer's R.C. 149.351 civil-forfeiture claim. *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Cincinnati Bd. of Edn.*, 98 Ohio St.3d 1407, 2003-Ohio-60, 781 N.E.2d 1016.

{¶ 8} This cause is now before the court upon the Enquirer's request for oral argument and its R.C. 149.43 mandamus claim and request for attorney fees.

### Request for Oral Argument

{¶ 9} The Enquirer requests oral argument "[i]n the event that the Court finds the decisional process would be aided by oral argument." We deny the request. "S.Ct.Prac.R. IX(2) does not require oral argument in this [original action] and [the Enquirer] does not specify why oral argument would be beneficial in this case." *Johnson v. Timmerman–Cooper* (2001), 93 Ohio St.3d 614, 615, 757 N.E.2d 1153. Moreover, this case involves none of the usual criteria warranting oral argument, and the parties' briefs are sufficient to resolve the issues raised. See *State ex rel. Painesville v. Lake Cty. Bd. of Commrs.* (2001), 93 Ohio St.3d 566, 569, 757 N.E.2d 347.

### Mandamus

{¶ 10} The Enquirer seeks a writ of mandamus to compel the board and Proact to provide it with access to the materials submitted by the three superintendent finalists at their interviews. "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 11. In resolving the Enquirer's claim, "R.C. 149.43 must be construed liberally in favor of broad access to records kept by public offices, and any doubt is to be resolved in favor of disclosure of the records." *State ex rel. Wallace v. State Med. Bd. of Ohio* (2000), 89 Ohio St.3d 431, 433, 732 N.E.2d 960; *State ex rel. Beacon Journal Publishing Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 8.

{¶ 11} R.C. 149.43(A)(1) defines "public record[s]" subject to the Public Records Act as "records kept by any public office, including * * * school district units." In construing this definition, the court first looks at the statutory language, according the words used their usual, normal, or customary meaning. *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Joyce*, 97 Ohio St.3d 192, 2002-Ohio-5807, 777 N.E.2d 253, ¶ 14. "Kept" is the past participle of "keep," which in this context means "preserve," "maintain," "hold," "detain," or "retain or continue to have in one's possession or power esp. by conscious or purposive policy." Webster's Third New International Dictionary (1986) 1235.

{¶ 12} Based on the language of R.C. 149.43(A)(1), the documents requested by the Enquirer *do not* constitute public records because neither the board nor Proact *kept* the materials submitted during the interviews of those three finalists. Neither the board nor Proact was required by law[1] or policy to retain those

---

1. The Enquirer claims that R.C. 149.351 required the board to keep the materials submitted by the applicants, but that statute does not so provide. And the court has already dismissed the Enquirer's R.C. 149.351 civil-forfeiture claim. 98 Ohio St.3d 1407, 2003-Ohio-60, 781 N.E.2d 1016.

materials, and neither respondent did keep them. To the contrary, their express policy during the interviews was that those materials remain in the possession of the finalists and not be integrated into respondents' records. Thus, the documents were not kept in the ordinary course of business for the school district. See *State ex rel. Margolius v. Cleveland* (1992), 62 Ohio St.3d 456, 461, 584 N.E.2d 665 ("a public record is simply a record kept in the course of business of a public institution").

{¶ 13}  The Enquirer's reliance on *State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.* (1997), 80 Ohio St.3d 134, 684 N.E.2d 1222, to contend otherwise is misplaced. In *Findlay,* we rejected a board of county commissioners' argument that because it had returned a settlement agreement to a private attorney hired by the county's insurer to defend a lawsuit on behalf of the county, the record was not a public record subject to R.C. 149.43. Id. at 137, 684 N.E.2d 1222. But unlike the documents at issue here, the private attorney acted as the county's agent and still had possession of the records. Therefore, the records in *Findlay* were still in effect kept by the county. Id. at 137–138, 684 N.E.2d 1222. In contrast, the applicants who kept their materials are not agents of the school board.

{¶ 14}  Our duty to liberally construe R.C. 149.43 in favor of access to public records also does not require a different result. There is no need to liberally construe a statute whose meaning is unequivocal and definite. *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 186, 724 N.E.2d 771. Since the definition of "public records" in R.C. 149.43(A)(1) unequivocally requires that the records be "kept" by any public office, the requested materials are not public records.

{¶ 15}  Moreover, because neither the board nor Proact has these requested materials, the Enquirer is not entitled to a writ of mandamus to compel what would be tantamount to an impossible act. *State ex rel. Spencer v. E. Liverpool Planning Comm.* (1999), 85 Ohio St.3d 678, 680, 710 N.E.2d 1129; *State ex rel. Moore v. Malone,* 96 Ohio St.3d 417, 2002-Ohio-4821, 775 N.E.2d 812, ¶ 38. As the United States District Court for the Southern District of Ohio, Western Division, recently held in dismissing the Enquirer's claim under Section 1983, Title 42, U.S.Code, regarding the board's actions, there is no "historical basis for access [to] resumes returned to candidates or for forcing a school board to create records." *Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Cincinnati Bd. of Edn.* (Feb. 11, 2003), S.D. Ohio No. C–1–02–775.

{¶ 16}  Therefore, we deny the writ.

10

### Attorney Fees

{¶ 17}   The Enquirer also requests attorney fees.   Under R.C. 149.43(C), a person aggrieved by a public office's failure to provide access to public records under the Public Records Act "may commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with division (B) of this section and that awards reasonable attorney's fees to the person that instituted the mandamus action."

{¶ 18}   The Enquirer is not entitled to attorney fees.   As noted previously, the requested records are not public records because they were never kept by the board or Proact.   In addition, the case the Enquirer cites to support its proposition that attorney fees may be awarded is distinguishable because in that case, the respondents provided the requested records after the relator commenced a mandamus action.   *State ex rel. Gannett Satellite Info. Network, Inc. v. Shirey* (1997), 78 Ohio St.3d 400, 678 N.E.2d 557; see, also, *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 661 N.E.2d 1049, syllabus.

### Conclusion

{¶ 19}   The requested records are not public records.   Therefore, we deny the writ of mandamus and deny the Enquirer's request for attorney fees.

Writ denied.

MOYER, C.J., F.E. SWEENEY, PFEIFER, COOK, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

RESNICK, J., not participating.

––––––––––

Graydon, Head & Ritchey, John C. Greiner and John A. Flanagan, for relator.

Taft, Stettinius & Hollister, L.L.P., William J. Seitz III and Mark J. Stepaniak, for respondents.