THE STATE EX REL. STEELE ET AL., *v.* MORRISSEY, AUD., ET AL.

[Cite as *State ex rel. Steele v. Morrissey,*
103 Ohio St.3d 355, 2004-Ohio-4960.]

(No. 2004–1445—Submitted September 15, 2004—Decided September 23, 2004.)

**Per Curiam.**

{¶ 1} Relators, Steve Steele, Mark Gray, and Joseph Minney, are electors of the city of Chillicothe, Ohio, who are members of a committee filing a petition proposing an ordinance establishing minimum staffing levels in the Chillicothe Fire Department. On July 20, 2004, relators filed a precirculation copy of the initiative petition with respondent Chillicothe Auditor William D. Morrissey. The petition was presented on a form prescribed by the Secretary of State of Ohio and in accordance with the instructions of an employee of respondent Ross County Board of Elections.

{¶ 2} The top of relators' petition contained a preprinted note that "[p]rior to circulation of an initiative petition proposing an ordinance or measure, a certified copy of such ordinance or measure must be filed with the City Auditor, Village Clerk or Township Clerk (home rule township)."

{¶ 3} The form continued with the following, mostly preprinted statement with the appropriate blanks filled in:

{¶ 4} "We, the undersigned, electors of the *City* of *Chillicothe,* Ohio respectfully propose to the electors of such city, village or township for their approval or rejection at the general election to be held on the *2[nd]* day of November, *2004* the following Ordinance:

{¶ 5} "The following is a full and correct copy of the title and text of the proposed Ordinance." (Italics sic.)

{¶ 6} Thereafter, a copy of the title and text of the proposed ordinance establishing required staffing levels within the Chillicothe Fire Department was included.

{¶ 7} Following the text of the proposed ordinance was the preprinted statement on the next page of the petition: "We hereby designate the following petitioners as a committee to be regarded as filing the petition or its circulation."

Directly underneath this sentence were relators' printed names and addresses. There is no evidence establishing who printed relators' names and addresses. The precirculation copy of relators' initiative petition contained no signatures.

{¶ 8} Relators circulated the initiative petition and collected signatures. On July 26, 2004, relators filed a petition containing over 1,000 signatures with Morrissey. On August 6, 2004, Morrissey transmitted the signed petition and the precirculation petition to the board of elections. On August 13, 2004, the board of elections notified Morrissey that the petition contained 770 valid signatures, which exceeded the required total of 622 valid signatures. The board returned the petition to Morrissey.

{¶ 9} On August 16, 2004, Chillicothe Law Director, Toni L. Eddy, submitted her opinion to Morrissey that the petition was insufficient and invalid because the precirculation copy filed by relators with Morrissey on July 20, 2004, did not contain a certified copy of the proposed ordinance as required by R.C. 731.32. On August 18, 2004, Morrissey notified the board of elections and relators that he would not certify the initiative petition for placement on the ballot based on the law director's opinion.

{¶ 10} On August 19, 2004, relators requested that the board of elections place the proposed ordinance on the November 2, 2004 general election ballot. The board of elections rejected relators' request.

{¶ 11} On August 30, 2004, relators filed this expedited election case for a writ of mandamus to compel Morrissey to certify the sufficiency and validity of the initiative petition to the board of elections and to compel the board of elections to place the proposed ordinance on the November 2, 2004 general election ballot. Relators also request attorney fees and expenses. Respondents answered the complaint, and the parties filed evidence and briefs in accordance with the expedited schedule set forth in S.Ct.Prac.R. X(9).

## Laches

{¶ 12} Respondents claim that we cannot consider the merits of relators' mandamus claim because their claim is barred by laches. "Relators in election cases must exercise the utmost diligence." *State ex rel. Fuller v. Medina Cty. Bd. of Elections,* 97 Ohio St.3d 221, 2002-Ohio-5922, 778 N.E.2d 37, ¶ 7. If relators do not act with the required promptness, laches may bar the action for extraordinary relief in an election-related matter. *Campaign to Elect Larry Carver Sheriff v. Campaign to Elect Anthony Stankiewicz Sheriff,* 101 Ohio St.3d 256, 2004-Ohio-812, 804 N.E.2d 419, ¶ 14.

{¶ 13} Relators waited 12 days from the date that Morrissey notified them that he would not certify the initiative petition to the board of elections for placement on the ballot to file this mandamus action on August 30. Respondents are correct

that a delay as short as nine days can bar an election action based on laches. *State ex rel. Vickers v. Summit Cty. Council,* 97 Ohio St.3d 204, 2002-Ohio-5583, 777 N.E.2d 830, ¶ 14.

{¶ 14} But cases in which laches is dispositive generally involve prejudice to the respondents in their statutory obligation to absentee voters to have absentee ballots printed and ready for use. Id. at ¶ 18; *State ex rel. Newell v. Tuscarawas Cty. Bd. of Elections* (2001), 93 Ohio St.3d 592, 596, 757 N.E.2d 1135; R.C. 3509.01. Unlike these cases, the schedule for evidence and briefs in this case was completed *before* the passage of the absentee-ballot date, and the 12–day delay was not unreasonable under the circumstances. Therefore, laches does not bar relators' mandamus claim. See *State ex rel. Hackworth v. Hughes,* 97 Ohio St.3d 110, 2002-Ohio-5334, 776 N.E.2d 1050, ¶ 27 ("the amended complaint filed in this case does not extend the schedule for the presentation of evidence and briefs in this expedited election case past the date for having absentee ballots printed and ready for use").

## Mandamus

{¶ 15} Relators claim that they are entitled to a writ of mandamus to compel Morrissey to certify the sufficiency and validity of the initiative petition and to transmit the proposed ordinance to the board of elections for placement on the November 2, 2004 election ballot.

{¶ 16} In order to be entitled to the writ of mandamus, relators must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of respondents to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Moore v. Malone,* 96 Ohio St.3d 417, 2002-Ohio-4821, 775 N.E.2d 812, ¶ 20. Because of the proximity of the November 2, 2004 election, they lack an adequate remedy in the ordinary course of law. *State ex rel. Commt. for the Charter Amendment, City Trash Collection v. Westlake,* 97 Ohio St.3d 100, 2002-Ohio-5302, 776 N.E.2d 1041, ¶ 21.

## R.C. 731.32

{¶ 17} Respondents contend that relators cannot prove a clear legal right to the requested relief or a clear legal duty on the part of Morrissey and the board of elections to provide it because relators failed to comply with R.C. 731.32. R.C. 731.32 requires that whoever proposes an ordinance by initiative petition must, before circulating the petition, file a certified copy of the ordinance with the city auditor or village clerk:

{¶ 18} "Whoever seeks to propose an ordinance or measure in a municipal corporation by initiative petition or files a referendum petition against any ordinance or measure shall, before circulating such petition, file a certified copy of the proposed ordinance or measure with the city auditor or the village clerk."

{¶ 19} R.C. 731.32 defines "certified copy" as used in the statute to require an attestation:

{¶ 20} "As used in this section, 'certified copy' means a copy containing a written statement *attesting* that it is a true and exact reproduction of the original proposed ordinance or measure or of the original ordinance or measure." (Emphasis added.)

{¶ 21} In construing R.C. 731.32, our paramount concern is the legislative intent in enacting the statute. *State ex rel. United States Steel Corp. v. Zaleski,* 98 Ohio St.3d 395, 2003-Ohio-1630, 786 N.E.2d 39, ¶ 12. In determining this intent, we first review the statutory language, reading words and phrases in context and construing them according to the rules of grammar and common usage. *State ex rel. Rose v. Lorain Cty. Bd. of Elections* (2000), 90 Ohio St.3d 229, 231, 736 N.E.2d 886; R.C. 1.42.

{¶ 22} " 'Attest' means 'to certify to the verity of a copy of a public document *formally by signature*' and an attested copy of a document is 'one which has been examined and compared with the original, with a certificate or memorandum of its correctness, *signed by the persons who have examined it.*' " (Emphasis added.) *State ex rel. Crossman Communities of Ohio, Inc. v. Greene Cty. Bd. of Elections* (1999), 87 Ohio St.3d 132, 137, 717 N.E.2d 1091, overruled in part on other grounds, *State ex rel. Commt. for the Referendum of Ordinance No. 3844– 02 v. Norris,* 99 Ohio St.3d 336, 2003-Ohio-3887, 792 N.E.2d 186, ¶ 36–41, quoting Black's Law Dictionary (6th Ed.1990) 127–128.

{¶ 23} These definitions are consistent with common usage. See Garner, Black's Law Dictionary (8th Ed.2004) 138, defining "attest" as "[t]o affirm to be true or genuine; to authenticate by *signing* as a witness." Moreover, "attestation clause" is defined as "[a] provision at an end of the instrument (esp. a will) that is *signed* by the instrument's witnesses"; see, also, Webster's Third New International Dictionary (1986) 141, defining "attest" as "to witness and authenticate by *signing* as a witness." (Emphasis added.)

{¶ 24} Relators assert that other dictionary definitions of "attest" do not require a signature. They rely on these dictionary definitions to claim that the plain and ordinary meaning of "attest" is to " 'affirm' the truth or accuracy of a particular fact or object." But in order to affirm the truth or accuracy of the proposed initiative, it is axiomatic that *someone* must affirm the truth of the title and text included in the initiative. That act requires a signature.

{¶ 25} In fact, the majority of the definitions of "attest" require a *signature,* a statement made *under oath,* someone *witnessing* the act, or some official *authentication* or *verification.* See Garner, Black's Law Dictionary (8th Ed.2004) 138, defining "attest" to mean "[t]o bear *witness; testify,*" "[t]o affirm to be true or genuine," and "to authenticate by *signing* as a *witness*"; Webster's

Third New International Dictionary (1986) 141, which defines "attest" to include "to bear *witness* to," "affirm to be true or genuine," "to witness and authenticate by *signing* as a witness," "to *authenticate officially*," "to establish or *verify* the usage of," "to be or stand as proof of," "to call to *witness*," and "to put on *oath* or *solemn declaration*"; see, also, American Heritage Dictionary (4th Ed.2001) 119, defining "attest" as "[t]o affirm to be correct, true, or genuine, *esp. by affixing one's signature as a witness*." (All emphasis added.)

{¶ 26} Relators' precirculation initiative petition filed with Morrissey contained no signature underneath the preprinted statement that "[t]he following is a full and correct copy of the title and text of the proposed Ordinance" and the proposed ordinance. That preprinted statement followed a preprinted statement that the "undersigned" electors proposed the submission of the proposed ordinance at the November 2, 2004 election. The use of the term "undersigned" indicates that the petition itself contemplated *signatures* attesting to the truth of the statement that the title and text of the proposed ordinance was "full and correct." But the precirculation initiative petition contained *no signatures*.

{¶ 27} The printed names and addresses of relators are instead contained on a separate petition page following the preprinted statement, "We hereby designate the following petitioners as a committee to be regarded as filing this petition or its circulation." Relators' names are consequently not expressly tied to the statement affirming the truth and correctness of the title and text of the proposed ordinance. In fact, there is no evidence regarding *who* printed relators' names and addresses, which appear to be printed by the same hand.

{¶ 28} And even if there were evidence that relators printed their own names and that these names directly followed the title and text of the proposed ordinance in the initiative petition, the names would still not constitute signatures for purposes of R.C. 731.32. See *State ex rel. Yiamouyiannis v. Taft* (1992), 65 Ohio St.3d 205, 208, 602 N.E.2d 644 ("R.C. 3501.38[B] requires that signatures be written in cursive, and the four printed signatures that relator asserts to be otherwise valid were properly rejected for this reason"); *State ex rel. Rogers v. Taft* (1992), 64 Ohio St.3d 193, 197, 594 N.E.2d 576 ("R.C. 3501.38 implicitly requires a cursive signature"); R.C. 731.31 (initiative and referendum petitions "shall be governed in all other respects by the rules set forth in section 3501.38 of the Revised Code").

{¶ 29} Moreover, relators argue that the conjunctive language in R.C. 3503.14 that a designated person must "*sign* the form and *attest* that the applicant indicated that he desired to register to vote or to change his name or residence" (emphasis added) establishes that the General Assembly does not consider these words to be synonymous. But this statute and others actually support the view that an attestation requires a *signature*. See, also, R.C. 3503.16(B)(2)(d) (any

registered elector who moves from one precinct to another may vote in that election if he or she "[c]ompletes and *signs*, under penalty of election falsification, a statement *attesting* that that registered elector moved * * * on or prior to the day of the election * * *"); R.C. 3505.18 ("The making of such mark shall be *attested* by the precinct official who shall evidence the same by *signing* his name on the poll list or signature pollbook as a witness to such mark"). (Emphasis added.)

{¶ 30} Therefore, relators' initiative petition did not comply with R.C. 731.32 because it did not include a certified copy of the proposed ordinance or measure when it was filed with the city auditor. Adopting relators' position would effectively have us delete the word "attesting" from the definition of "certified copy" in R.C. 731.32. This we cannot do. " 'Courts have a duty to give effect to the words used in a statute and not to delete words used or to insert words not used.' " *State ex rel. Gaydosh v. Twinsburg* (2001), 93 Ohio St.3d 576, 579, 757 N.E.2d 357, quoting *Erb v. Erb* (2001), 91 Ohio St.3d 503, 507, 747 N.E.2d 230.

{¶ 31} The purpose of the R.C. 731.32 precirculation certified-copy requirement for a proposed or actual ordinance is to afford interested citizens an opportunity to examine the proposed ordinance that is the subject of the initiative petition or to review the actual ordinance that is the subject of the referendum petition. See *State ex rel. Barletta v. Fersch,* 99 Ohio St.3d 295, 2003-Ohio-3629, 791 N.E.2d 452, ¶ 18. This purpose is advanced if someone affirmatively attests to the preprinted petition statement that the proposed ordinance that is contained therein is true and accurate by affixing a signature to the petition following the preprinted statement and the title and text of the proposed ordinance. If there is no signature, no one has specifically attested to the preprinted statement, and interested citizens might be uncertain about the validity of the proposed ordinance contained in the precirculation copy of the petition.

## Constitutional Power of Initiative; Liberal Construction

{¶ 32} Relators argue that because R.C. 731.32 affects the constitutional right of citizens to propose legislation by initiative, it must be liberally construed. We have recognized that "provisions for municipal initiative * * * are liberally construed so as to permit rather than preclude the exercise of this power." *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 476, 764 N.E.2d 971.

{¶ 33} " 'Nevertheless, the settled rule is that election laws are mandatory and require strict compliance and that substantial compliance is acceptable only when an election provision states that it is.' " *State ex rel. Commt. for the Proposed Ordinance to Repeal Ordinance No. 146–02, West End Blight Designation v. Lakewood,* 100 Ohio St.3d 252, 2003-Ohio-5771, 798 N.E.2d 362, ¶ 30, quoting *Ditmars,* 94 Ohio St.3d at 476, 764 N.E.2d 971. "R.C. 731.32 does not expressly

permit substantial compliance, so it requires strict compliance." *State ex rel. Barletta v. Fersch,* 99 Ohio St.3d 295, 2003-Ohio-3629, 791 N.E.2d 452, ¶ 17.

{¶ 34} In fact, because R.C. 731.32 unambiguously requires at least a signature of a person affirming the truth and accuracy of the title and text of the proposed ordinance, we must apply the statute rather than construe it. See *BedRoc Ltd., L.L.C. v. United States* (2004), 541 U.S. 176, 124 S.Ct. 1587, 1593, 158 L.Ed.2d 338 ("our inquiry begins with the statutory text, and ends there as well if the text is unambiguous"); *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 186, 724 N.E.2d 771 (no need to liberally construe a statute whose meaning is unequivocal and definite).

{¶ 35} The R.C. 731.32 requirement of a signature affirming the truth of the proposed ordinance on the precirculation copy of the initiative petition is a minimal requirement to protect the integrity and reliability of the initiative process. See *Buckley v. Am. Constitutional Law Found., Inc.* (1999), 525 U.S. 182, 191, 119 S.Ct. 636, 142 L.Ed.2d 599 ("[s]tates allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with respect to election processes generally").

{¶ 36} Relators' citation of *State ex rel. Vickers v. Summit Cty. Council* (2001), 93 Ohio St.3d 526, 757 N.E.2d 310, and *State ex rel. Blackwell v. Bachrach* (1957), 166 Ohio St. 301, 2 O.O.2d 219, 143 N.E.2d 127, to suggest that R.C. 731.32 is inapplicable lends no credible support to their claim. These cases involved petitions amending county or city charters, which is not the situation here.

## Estoppel

{¶ 37} Insofar as relators relied on forms prescribed by the Secretary of State and advice given by the board of elections in completing and filing the initiative petition, " '[e]stoppel does not apply against election officials in the exercise of governmental functions.' " *Barletta,* 99 Ohio St.3d 295, 2003-Ohio-3629, 791 N.E.2d 452, ¶ 19, quoting *Ditmars,* 94 Ohio St.3d at 476, 764 N.E.2d 971; *State ex rel. Rust v. Lucas Cty. Bd. of Elections,* 100 Ohio St.3d 214, 2003-Ohio-5643, 797 N.E.2d 1254, ¶ 11 (board of elections not estopped from asserting defects in nominating petition based on relator's assertion that he was misled by board of elections officials).

{¶ 38} Nor did Morrissey's alleged failure to certify the petition when he transmitted it to the board of elections estop him from raising the insufficiency and invalidity of the petition subsequently. Moreover, Morrissey's certification to the board of elections of the petition for examination of the signatures contained a *signed* letter by him certifying that the enclosed petition had been filed in his office. By contrast, relators' precirculation initiative petition contained no signatures.

## Conclusion

{¶ 39} Based on the foregoing, Morrissey did not abuse his discretion or disregard applicable law by refusing to certify the sufficiency and validity of the initiative petition and by failing to transmit the proposed ordinance to the board of elections for placement on the November 2, 2004 election ballot. See *Crossman*, 87 Ohio St.3d at 137, 717 N.E.2d 1091. In fact, Morrissey had a duty not to do so because the petition failed to comply with R.C. 731.32. *Barletta*, 99 Ohio St.3d 295, 2003-Ohio-3629, 791 N.E.2d 452, ¶ 13–18. In addition, the board had no duty to place the proposed ordinance on the November 2, 2004 election ballot because its statutory duty to do so is conditioned on the auditor's certification of the sufficiency and validity of the initiative petition. R.C. 731.28 ("the board shall submit such proposed ordinance or measure for the approval or rejection of the electors of the municipal corporation at the next general election occurring subsequent to seventy-five days after the auditor or clerk certifies the sufficiency and validity of the initiative petition to the board of elections"). Therefore, we deny the writ.

Writ denied.

MOYER, C.J., RESNICK, F.E. SWEENEY, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

PFEIFER, J., dissents.

———————

Hunter, Carnahan, Shoub & Byard, Russell E. Carnahan and Robert R. Byard, for relators.

Toni L. Eddy, Chillicothe Law Director, and James L. Mann, Assistant Law Director, for respondent Morrissey.

Scott W. Nusbaum, Ross County Prosecuting Attorney, and Jason M. Miller, Assistant Prosecuting Attorney, for respondent Ross County Board of Elections.