THE STATE EX REL. OBERLIN CITIZENS FOR RESPONSIBLE
DEVELOPMENT ET AL. *v.* TALARICO, AUD.

[Cite as *State ex rel. Oberlin Citizens for Responsible Dev.
v. Talarico,* 106 Ohio St.3d 481, 2005-Ohio-5061.]

(No. 2005–1622—Submitted September 16, 2005—Decided September 27, 2005.)

**Per Curiam.**

{¶ 1} Relator Oberlin Citizens for Responsible Development ("Oberlin Citizens") is a committee designated to circulate certain initiative and referendum petitions. Its members are relators J.J. Schaum, David Laczko, Mary H. McCalla, and John Whitman, taxpayers and residents of the city of Oberlin, Ohio.

{¶ 2} On August 1, 2005, the Oberlin Council passed Ordinance No. 05–55 AC CMS, which was entitled "An Ordinance Approving a Construction Development Agreement with Wal–Mart Real Estate Business Trust ['Wal–Mart'] for the Construction of Certain Public Improvements Relating to the Development of a Proposed Wal–Mart and Declaring an Emergency." Wal–Mart had submitted plans to the Oberlin Planning Commission and the city for a proposed development to be located at 46440 U.S. Route 20 in the city, and the planning commission had approved the site plan and improvement plans for the development.

{¶ 3} The ordinance approved a construction development agreement between Oberlin and Wal–Mart for the construction and installation of public improvements in or adjacent to the proposed development. The improvements included a sanitary sewer system, a storm sewer system, water mains, fire hydrants, and road work. The agreement stated that the required improvements would be constructed in accordance with approved plans and specifications that were consistent with city ordinances and construction requirements. Before Wal–Mart could begin construction, it was required to "file with the City Engineer a copy of all permits necessary for the improvements, including all required ODOT permits for road improvements, State plan approval and permits for water main exten-

sion, State plan approval and permits for sanitary sewer extension, and State NPDES permit for stormwater control and discharge." The ordinance also authorized and directed the city manager to execute the agreement on behalf of Oberlin.

{¶ 4} The Oberlin Council passed Ordinance No. 05–55 AC CMS with a declaration that it was "an emergency measure necessary for the immediate preservation of the public peace, health, and safety of the citizens of the City of Oberlin, or to provide for the usual daily operation of a municipal department, to wit:

{¶ 5} " 'to approve a Construction Development Agreement in a timely manner so as to avoid construction delays,' and [it] shall take effect immediately upon passage."

{¶ 6} On August 12, 2005, Oberlin Citizens filed an initiative petition containing 401 signatures and a referendum petition containing 404 signatures with respondent, Oberlin Finance Director–Auditor Salvatore Talarico. On the face of the petitions, the number of signatures exceeded the number required to place the issues on the November 8, 2005 election ballots. The initiative petition proposes an ordinance to repeal Ordinance No. 05–55 AC CMS, and the referendum petition seeks an election on Ordinance No. 05–55 AC CMS.

{¶ 7} By letter dated August 22, Oberlin Law Director Eric R. Severs advised Talarico that he had no duty to certify the initiative and referendum petitions to the Lorain County Board of Elections because (1) Ordinance No. 05–55 AC CMS was validly passed as an emergency ordinance by Oberlin City Council and, as a result, is not subject to referendum and (2) the passage of Ordinance No. 05–55 AC CMS represented an administrative act of Oberlin City Council, and therefore, the ordinance is not subject to either the initiative or referendum process.

{¶ 8} On August 25, Oberlin Citizens and its members demanded that the law director bring a legal action to compel Talarico to submit the petitions to the board of elections for validation of the petition signatures and to certify the sufficiency and validity of the petitions if they contained the required number of valid signatures. The law director rejected the demand on August 30.

{¶ 9} On August 31, relators, Oberlin Citizens and its members, filed this expedited election case for a writ of mandamus to compel Talarico to submit the initiative and referendum petitions to the board of elections for a certification of the number of valid signatures and to certify the sufficiency and validity of the petitions to the board for placement on the November 8, 2005 election ballot if they contain a sufficient number of valid signatures. Relators also request an award of reasonable attorney fees. Talarico answered, and relators filed their evidence and merit brief pursuant to the court's accelerated schedule. S.Ct.

Prac.R. X(9). Talarico's evidence and brief were due on September 15, but he failed to file them.

{¶ 10} This cause is now before us for a consideration of the merits.

## Mandamus

{¶ 11} Relators claim they are entitled to a writ of mandamus. In order to be entitled to the requested writ, relators must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of Talarico to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Moore v. Malone*, 96 Ohio St.3d 417, 2002-Ohio-4821, 775 N.E.2d 812, ¶ 20. Because of the proximity of the November 8, 2005 election, relators lack an adequate remedy in the ordinary course of the law. *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 16.

{¶ 12} Therefore, the dispositive issue is whether relators have established a clear legal right to the requested relief and a clear legal duty on the part of Talarico to provide it.

## Ministerial and Limited Discretionary Authority

{¶ 13} Under Section XXIV of the Oberlin Charter, "[t]he rights of initiative and referendum upon ordinances and action taken by Council * * * are hereby reserved to the people and shall be carried out according to the Constitution of the State of Ohio and the laws of the State of Ohio." Because the Oberlin Charter incorporates the general law concerning initiative and referendum, the statutory procedure governing municipal initiative in R.C. 731.28 through 731.41 applies. See *State ex rel. Ditmars v. McSweeney* (2002), 94 Ohio St.3d 472, 477, 764 N.E.2d 971.

{¶ 14} R.C. 731.28 and 731.29 impose a ministerial duty on the part of city auditors and village clerks, after ten days following the date an initiative or referendum petition was filed, to transmit the petition and a certified copy of the ordinance or other measure to the board of elections for the board to determine the number of electors of the municipal corporation who signed the petition. See, also, *Ditmars*, 94 Ohio St.3d at 477, 764 N.E.2d 971; *State ex rel. Sinay v. Sodders* (1997), 80 Ohio St.3d 224, 230–231, 685 N.E.2d 754. The board then returns the petition to the auditor or clerk, who exercises limited discretionary authority to determine the sufficiency and validity of the petition. *Ditmars*, 94 Ohio St.3d at 477, 764 N.E.2d 971; *Sinay*, 80 Ohio St.3d at 231, 685 N.E.2d 754. Upon certification, the board of elections must submit the ordinance or measure at the next election occurring after 75 days from certification to the board, but only if the board determines that the petition is sufficient and valid. Id.

{¶ 15} Talarico refused to transmit or certify relators' initiative and referendum petitions to the Lorain County Board of Elections.

{¶ 16} He erred in doing so because under R.C. 731.28 and 731.29, he had a mandatory, ministerial duty to transmit the petitions to the board of elections for its signature verification after ten days had elapsed from the date the petitions were filed. Moreover, even if Talarico had received the petitions back from the board, he abused his limited discretionary authority by refusing to certify the petitions' sufficiency and validity based upon a judicial or quasi-judicial determination that the subject matter of Ordinance No. 05–55 AC CMS was administrative rather than legislative. See *State ex rel. N. Main St. Coalition v. Webb*, 106 Ohio St.3d 437, 2005-Ohio-5009, 835 N.E.2d 1222, ¶ 31 ("Webb improperly engaged in a judicial or quasi-judicial determination to decide the manifestly substantive issue[ ] of whether the ordinance proposed by relators' initiative petition involved a subject that the village was authorized to control by legislative action"); *State ex rel. Barberis v. Bay Village* (1971), 31 Ohio Misc. 203, 204, 59 O.O.2d 366, 281 N.E.2d 209 ("Whether any given action of a municipal council is legislative or administrative is a judicial question").

{¶ 17} Nevertheless, although Talarico should have complied with R.C. 731.28 and 731.29 by transmitting the petition and a certified copy of the ordinance to the board of elections for its signature verification, we need not grant the requested writ of mandamus if the board of elections would ultimately have been required to withhold the initiative and referendum from the ballot. It is axiomatic that "[m]andamus will not issue to compel a vain act." *State ex rel. Moore v. Malone*, 96 Ohio St.3d 417, 2002-Ohio-4821, 775 N.E.2d 812, ¶ 38.

{¶ 18} By contrast, in *Webb*, we recently granted a writ of mandamus to compel the village clerk to transmit the initiative petition to the board of elections because the petition in that case covered a legislative act that was the proper subject of initiative. Therefore, granting the writ in that case did not constitute a vain act.

{¶ 19} The parties have fully argued this issue, and it is manifest that relators' true objective is the placement of the issue on the November 8 ballot. Deciding this issue will thus have the beneficial effect of resolving the entire expedited case on the issues that the parties have submitted to us for determination so as to avoid further litigation that granting the writ would surely engender in the short time before the election.

{¶ 20} Therefore, given the proximity of the election, we consider Talarico's claim that the enactment of Ordinance No. 05–55 AC CMS constituted administrative action, which is not subject to initiative or referendum.

Legislative or Administrative Act

{¶ 21} As noted, one of the primary issues raised by the parties is whether the Oberlin Council's enactment of Ordinance No. 05–55 AC CMS, which adopts a development agreement for the construction of public improvements attendant to a proposed development, constitutes legislative or administrative action.

{¶ 22} Section 1f, Article II of the Ohio Constitution provides initiative and referendum power only on those questions that municipalities "may now or hereafter be authorized by law to control by *legislative* action." (Emphasis added.) Conversely, "[p]ursuant to Section 1f, Article II of the Ohio Constitution, actions taken by a municipal legislative body, whether by ordinance, resolution, or other means, that constitute *administrative* action, are not subject to [initiative or] referendum proceedings." (Emphasis added.) *Buckeye Community Hope Found. v. Cuyahoga Falls* (1998), 82 Ohio St.3d 539, 697 N.E.2d 181, paragraph two of the syllabus.

{¶ 23} "The test for determining whether the action of a legislative body is legislative or administrative is whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." *Donnelly v. Fairview Park* (1968), 13 Ohio St.2d 1, 42 O.O.2d 1, 233 N.E.2d 500, paragraph two of the syllabus.

{¶ 24} In applying this test to the applicable ordinance, Ordinance No. 05–55 AC CMS merely executes and administers laws already in existence instead of enacting new laws. As the law director observed, "Section 1317.02 of the Oberlin Codified Ordinances requires that a developer enter into a construction agreement with the City in order to assure the construction and installation of all public improvements in the proposed development to the satisfaction of the City, and in accordance with the site plan." Relators do not claim that this provision is inapplicable.

{¶ 25} Under Section 1317.02 of the Codified Ordinances of Oberlin, the construction development agreement must meet the following requirements:

{¶ 26} "To assure construction and installation of improvements required by this Subdivision Ordinance, the subdivider shall execute a Construction Agreement in form and substance as determined by the City Solicitor. The Construction Agreement shall, at a minimum, provide that: the improvements shall be constructed and installed at the subdivider's expense in compliance with the standards and specifications for each of the various types of improvements and according to the provisions of the Construction Agreement; the improvements shall be made available to and for the benefit of the land within the subdivision; that the subdivider shall pay fees required for inspection and testing, and the schedule for such payments; and the improvements will be completed and installed by a specific stated date."

{¶ 27} The ordinance, which approved an agreement that comports with Section 1317.02, does not constitute an amendment of the zoning of the property. Cf. *State ex rel. Zonders v. Delaware Cty. Bd. of Elections* (1994), 69 Ohio St.3d 5, 11, 630 N.E.2d 313 ("Generally, the adoption of a zoning amendment, like the enactment of the original zoning ordinance, is a legislative act which is subject to referendum"); *State ex rel. Hazel v. Cuyahoga Cty. Bd. of Elections* (1997), 80 Ohio St.3d 165, 685 N.E.2d 224 (proposed ordinance to amend building code to provide for acquiring, constructing, and regulating penal facilities is a legislative act that is a proper subject of initiative). In fact, there is evidence suggesting that the property has already been zoned for commercial uses.

{¶ 28} Instead, the ordinance is comparable to approving a site plan for development of land or approving a final subdivision plat pursuant to existing zoning and other applicable regulations. See *Buckeye Community,* 82 Ohio St.3d 539, 697 N.E.2d 181 (ordinance approving site plan for proposed development of low-income apartment complex is an administrative action not subject to referendum proceedings); *C & D Partnership v. Gahanna* (1984), 15 Ohio St.3d 359, 362, 15 OBR 480, 474 N.E.2d 303 (failure or refusal of city council to approve a subdivision plat is an administrative action); see, also, *SuperValu Holdings, Inc. v. Jackson Ctr. Assoc., L.P.*, Clermont App. Nos. CA2003–12–108 and CA2003–12–110, 2004-Ohio-4314, 2004 WL 1834272 (township's approval of major amendment to site plan for proposed Wal–Mart supercenter constituted an administrative act because township's decision did not amount to a legislative rezoning of the property).

{¶ 29} *State ex rel. Waldick v. Williams* (1995), 74 Ohio St.3d 192, 658 N.E.2d 241, and *State ex rel. Leach v. Redick* (1959), 168 Ohio St. 543, 7 O.O.2d 422, 157 N.E.2d 106, cited by relators, are inapposite because those cases did not involve initiative or referendum.

{¶ 30} In another case cited by relators, we held that "[a]n ordinance passed by the council of an Ohio noncharter municipality designating parking spaces for vehicles with the installation and use of mechanical parking meters in connection with such spaces is a legislative measure subject to the initiative and referendum within the contemplation of Section 1f, Article II of the Constitution of Ohio." *State ex rel. Sharpe v. Hitt* (1951), 155 Ohio St. 529, 44 O.O. 489, 99 N.E.2d 659, paragraph two of the syllabus. There is no indication in *Sharpe* that the ordinance at issue there simply executed laws already in existence, as the ordinance here does.

{¶ 31} Based on the foregoing, because the Oberlin City Council's enactment of Ordinance No. 05–55 AC CMS merely executed and administered existing laws, its enactment constitutes an administrative action, which is not properly the subject of either referendum or initiative seeking its repeal. See *State ex rel.*

*Commt. for the Referendum of Ordinance No. 3844–02 v. Norris,* 99 Ohio St.3d 336, 2003-Ohio-3887, 792 N.E.2d 186 (city ordinances adopting final development plans and final plats for portions of planned community development were administrative and not subject to referendum). Accordingly, relators have established no right to have their initiative and referendum placed on the November 8, 2005 election ballot.

### Emergency Ordinance

{¶ 32} Relators also contend that Talarico had a duty to transmit the referendum petition to the board of elections because by including purely conclusory language denoting the emergency in Ordinance No. 05–55 AC CMS, the measure failed to meet the requirements of R.C. 731.30 for a valid emergency ordinance that would have exempted it from referendum. See, e.g., *State ex rel. Webb v. Bliss,* 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102.

{¶ 33} We need not address this claim, however, because the ruling that the enactment of the ordinance constituted an administrative action that cannot be repealed by initiative or referendum renders it moot. *State ex rel. Essig v. Blackwell,* 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 33.

### Conclusion

{¶ 34} Based on the foregoing, we deny the writ. Relators have not established a clear legal right to compel Talarico to transmit or certify the initiative and referendum petitions to the board of elections or a clear legal duty on the part of Talarico to do so, because relators are not entitled to placement of the initiative or referendum on the November 8, 2005 election ballot.

{¶ 35} Nevertheless, we emphasize that city auditors and village clerks exceed their ministerial and limited discretionary authority under the pertinent statutes by deciding whether ordinances are legislative or administrative for purposes of determining whether they are subject to initiative and referendum. These issues should be initially decided by the local authorities best equipped to gauge compliance with election laws—boards of elections—after petitions are certified to them by city auditors and village clerks, rather than by auditors and clerks.

*Writ denied.*

MOYER, C.J., RESNICK, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

PFEIFER, J., dissents.

———————

**PFEIFER, J., dissenting.**

{¶ 36} I would grant the writ and award reasonable attorney fees to relators. To hold otherwise is to encourage clerks to continue to make judicial or quasi-judicial determinations beyond their authority. Whether right or wrong, those are not their calls to make.

---

Phillips & Co., L.P.A., and Gerald W. Phillips, for relators.

Eric R. Severs, Oberlin Law Director, for respondent.